Gary M. Klinger (admitted pro hac vice)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
Email: gklinger@milberg.com

Charles H. Thronson, USB 3260
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
CThronson@parsonsbehle.com

*Interim Liaison Counsel for Plaintiffs*

William B. Federman (admitted pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com
*Interim Co-Lead Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SHANE WHITE; AHMED AMER; JOEL THORNTON; PATRICIA A. DEAN;** and **JAMES BRUNO**, individually and on behalf of all others similarly situated<br><br>　　　Plaintiffs,<br><br>v.<br><br>**MEDICAL REVIEW INSTITUTE OF AMERICA, LLC,**<br><br><br>Defendant. | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No. 2:22-cv-00082<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

III.   THE SETTLEMENT AGREEMENT .............................................................. 4

  A. DEFINITION OF THE CLASS ......................................................................... 4

  B. SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS ................... 4

    1.  Cash Payments ......................................................................................... 4

      a.  Ordinary Out-of-Pocket Losses ...................................................... 4

      b.  Lost Time ........................................................................................ 5

      c.  Extraordinary Losses ...................................................................... 5

    2.  Identity Theft Protection and Credit Monitoring .................................... 6

    3.  Remedial Measures .................................................................................. 6

    4.  Confirmatory Discovery .......................................................................... 6

    5.  Settlement Administration ....................................................................... 6

    6.  Notice ....................................................................................................... 7

    7.  Exclusion and Objection .......................................................................... 8

    8.  Distribution of Benefits ........................................................................... 8

    9.  Attorney's Fees, Expenses, and Service Awards .................................... 8

IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .......... 9

  A. STANDARDS FOR PRELIMINARY APPROVAL ................................................ 9

  B. THE JONES FACTORS AND RULE 23(e) FACTORS ARE SATISFIED ...................... 11

    1.  Jones Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly

        Negotiated at Arm's Length .................................................................... 11

ii

2.  *Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation ............................................................................ 13

3.  *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation ...................................................................... 14

4.  *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable ............ 15

5.  Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement.............. 16

6.  Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief............. 17

7.  Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified ..................... 18

V.  THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION ....... 18

A. THE RULE 23(A) FACTORS ARE MET ........................................................................ 18

1.  The Settlement Class is So Numerous that Joinder is Impracticable................................ 19

2.  Plaintiffs' Claims and Defenses are Typical of the Settlement Class............................... 19

3.  Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class ................... 20

B. THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3)................................................. 21

1.  Common Questions Predominate ..................................................................................... 21

2.  A Class Action is the Superior Method for Adjudication.................................................. 22

VI.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM ............. 23

VII.  CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................. 18, 21

*Amoco Prod. Co. v. Fed. Power Comm'n*,
    465 F.2d 1350 (10th Cir. 1972) .................................................................. 9

*Ashley v. Reg'l Transp. Dist.*,
    2008 WL 384579 (D. Colo. Feb. 11, 2008) ............................................... 11

*CGC Holding Co., LLC v. Hutchens*,
    773 F.3d 1076 (10th Cir. 2014) ................................................................ 22

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
    888 F.3d 455 (10th Cir. 2017) .................................................................. 17

*Circle v. Jim Walter Homes, Inc.*,
    535 F.2d 583 (10th Cir. 1976) .................................................................. 19

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) .................................................................. 11

*Desktop Direct, Inc. v. Digital Equip. Corp.*,
    993 F.2d 755 (10th Cir. 1993) ................................................................. 9, 10

*DG v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ................................................................ 19

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................... 13

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
    271 F. App'x 41 (2d Cir. 2008) ............................................................... 23

*In re Crocs, Inc. Sec. Litig.,* No. 07-cv-02351-PAB-KLM, 07-cv-02351-PAB-KLM,
    2013 WL 4547404 (D. Colo. Aug. 28, 2013) ........................................... 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) .................................................................... 13

*In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488 (D. Kan. 2012) .................. 10

iv

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009) ............................................................. 13, 14

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ............................................................................... 9, 11

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ..................................................................... 12, 14, 15

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
    2010 WL 5387559 (D. Colo. Dec. 22, 2010) ............................................................. 16

*Maez v. Springs Auto. Group, LLC*,
    268 F.R.D. 391 (D. Colo. 2010) ................................................................................. 20

*Marcus v. State of Kansas, Dep't of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002) ....................................................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................... 23

*Oppenlander v. Standard Oil Co. (Indiana)*,
    64 F.R.D. 597 (D. Colo. 1974) ................................................................................... 15

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
    313 F.R.D. 117 (D. Colo. 2016) ................................................................................. 20

*Rex v. Owens ex rel. State of Okl.*,
    585 F.2d 432 (10th Cir. 1978) ................................................................................... 19

*Rhodes v. Olson Assocs., P.C.*,
    308 F.R.D. 664 (D. Colo. 2015) ........................................................................... 11, 15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................... 17

*Rosenfeld v. Lenich*,
    No. 18-CV-6720-NGGPK, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) .................. 17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................... 18, 19, 20

## **<u>Statutes</u>**

815 Ill. Comp. Stat. §§ 505/1 ........................................................................................ 3

Fla. Stat. § 501.201 ...................................................................................................... 3

N.J.S.A. § 56:8-1 .......................................................................................................... 3

## **<u>Rules</u>**

Fed. R. Civ. P. 23(a)(1) .............................................................................................. 19

Plaintiffs Shane White, Ahmed Amer, Joel Thornton, Patricia A. Dean and James Bruno, individually and on behalf of the putative class, (collectively, "Plaintiffs") hereby respectfully submit this Unopposed Motion for Preliminary Approval of Settlement and Memorandum of Law in Support and request the Court preliminarily approve the Settlement, certify the Settlement Class, appoint Plaintiffs as Class Representatives, appoint William B. Federman of Federman & Sherwood and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Co-Class Counsel, approve the notice plan, and order notice to the Class as soon as practicable. [1]

## I.   **INTRODUCTION**

In November 2021, cybercriminals infiltrated Defendant Medical Review Institute of America, LLC's ("MRIA" or "Defendant") network servers (the "Data Incident"). As a result, the cybercriminals gained access to personally identifiable information ("PII") and protected health information ("PHI") of approximately 154,935 individuals. The types of PII and PHI potentially exposed includes: (i) demographic information (*i.e.,* first and last name, gender, home address, phone number, email address, date of birth, and Social Security number; (ii) clinical information (*i.e.*, medical history/diagnosis/treatment, dates of service, lab test results, prescription information, provider name, medical account number, and similar items in the individual's medical file/record); and (iii) financial information (*i.e.,* health insurance policy and group plan number, group plan provider, and claim information).

Plaintiffs received formal notice of the Data Incident and commenced multiple class action lawsuits alleging that Defendant failed to sufficiently protect their PII and PHI. The cases were consolidated before this Court on July 22, 2022 (ECF No. 29).

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached hereto as Exhibit 1 (with its respective exhibits A–E). All citations to the Settlement Agreement will be abbreviated as "SA, § ___."

After over a year of hard-fought litigation, the Parties have agreed to a Settlement that provides substantial monetary benefits and injunctive relief to the Settlement Class. Specifically, the Settlement provides monetary relief that will: (i) reimburse documented Out-of-Pocket Expenses of up to $700.00 per Settlement Class Member who incurred expenses as a result of the Data Incident; (ii) reimburse each Settlement Class Member for up to three (3) hours of attested Lost Time responding to the Data Incident at a rate of $20.00 per hour; and (iii) reimburse each Class Member up to $5,000.00 for actual, documented, and unreimbursed monetary loss that was more than likely caused by the Data Incident. SA, § 3. In addition, all Settlement Class Members are eligible to receive thirty (30) months of credit monitoring and identity theft protection, with $1,000,000 in identity theft insurance. SA, § 3(d). MRIA will pay for attorneys' fees, costs, and expenses that may be awarded by the Court as well as service awards to Plaintiffs. SA, § 9. Finally, the Settlement provides remedial measures in the form of meaningful enhancements to MRIA's cybersecurity. SA, § 4. Defendant will also pay for the cost of notice to the Settlement Class and the costs of settlement administration. Settlement benefits are subject to an aggregate cap of $2,600,000.00 and Defendant will separately fund all remedial measures required under the Settlement. SA, § 6.

As detailed below, the Settlement falls within the range of final judicial approval and includes a comprehensive notice plan. MRIA does not oppose the relief requested in this motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

MRIA provides external review of medical, dental, behavioral health, pharmacy, vision, disability, workers' compensation, and auto claims for insurance carriers, employers, TPAs, self-administered union groups, pharmacy benefit managers, human resource consultants and departments of insurance across the country.

2

According to the notice letters Defendant sent to Plaintiffs and the Class, MRIA learned on November 9, 2021, that it was the victim of a cyber-attack in which an unknown actor gained access to the PII and PHI of thousands of individuals. On January 7, 2022, MRIA began to send notice letters to the potentially impacted individuals.

Each Plaintiff filed a class action lawsuit against Defendant, asserting claims for relief emanating from the Data Incident. These class action lawsuits were consolidated before this Court (ECF No. 29) under *White v. Medical Review Institute of America, LLC,* 2:22cv0082 DAK-DAO.[2] The Court appointed Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC and William B. Federman of Federman & Sherwood as Interim Co-Lead Counsel, and Charles H. Thronson as Liaison Counsel (ECF No. 29).

On October 3, 2022, the Consolidated Class Action Complaint ("Consol. Compl.") (ECF No. 34) was filed. Plaintiffs alleged causes of action against MRIA for: (i) negligence; (ii) invasion of privacy; (iii) unjust enrichment; (iv) breach of fiduciary duty;(v) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. § 501.201 *et seq.*; (vi) violation of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. §§ 505/1 *et seq.*; and (vii) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq. See generally* Consol. Compl. Plaintiffs and the putative class also sought monetary and equitable relief. *Id.*

Shortly after the Consolidated Complaint was filed, the Parties agreed to engage in voluntary settlement negotiations. After months of arm's-length negotiations between competent and experienced counsel, including the exchange of informal discovery, the Parties attended a

---

[2] Cases consolidated under *White v. Medical Review Institute of America, LLC,* 2:22cv0082 DAK-DAO, include: (i) *Karen Purvis v. Medical Review Institute of America, LLC*, 2:22-cv-00099; (ii) *Ahmed Amer v. v. Medical Review Institute of America, LLC*, 2:22-cv-00132; (iii) *Joel Thornton v. Medical Review Institute of America, LLC*, 2:22-cv-00181; and (iv) *Patricia A. Dean v. Medical Review Institute of America, LLC*, 2:22-cv-00226.

mediation with Honorable Stuart E. Palmer (Ret.) on December 14, 2022. During the mediation, the Parties reached an agreement as to the material terms of the settlement. The parties continued to work diligently over the next month, exchanging multiple calls and emails to finalize the Settlement Agreement. Plaintiffs now seeks preliminary approval of that Agreement.

Plaintiffs and their Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with MRIA, that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members.

## III.    THE SETTLEMENT AGREEMENT

### A.  DEFINITION OF THE CLASS

The Parties contemplate certification (for settlement purposes only) of a nationwide class. The Settlement Class is comprised of 154,935 individuals. SA, § 1. The proposed Settlement Class is defined as follows:

> All persons residing in the United States to whom MRIA sent its notice of the Data Incident that MRIA discovered on or about November 9, 2021.

SA, § 1. The Settlement Class specifically excludes: (i) MRIA's officers and directors; (ii) any entity in which MRIA has a controlling interest; (iii) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of MRIA; and (iv) members of the judiciary to whom this case is assigned, their families and members of their staff. SA, § 1.

### B.  SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

#### 1.  Cash Payments

##### a.  *Ordinary Out-of-Pocket Losses*

Under the Settlement, MRIA will reimburse ordinary out-of-pocket expenses incurred as a result of the Data Incident up to $700.00 per Class Member. SA, § 3(b). Such out-of-pocket

expenses include, but are not limited to, bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel, and fees for credit reports, credit monitoring, or other identity theft insurance product purchased between November 2, 2022, and the date of the Settlement Agreement. SA, §§ 3(b)(i–ii) and (iv). To receive payment, a Class Member need only submit a valid claim and documentation of the expenses incurred. SA, § 3(b).

### b.   Lost Time

Settlement Class Members who spent time in response to the Data Incident will also be eligible to receive reimbursement for up to three (3) hours of time spent at a rate of twenty dollars ($20.00) per hour. SA, § 3(b)(iii). This payment will be included in the $700.00 per person cap for Compensation for Documented Out-of-Pocket Losses and Lost Time. SA, § 3(b)(iii). No documentation will be required for Settlement Class Members to claim this benefit.

### c.   Extraordinary Losses

Additionally, MRIA will provide up to $5,000.00 in compensation to each claimant who was the victim of identity theft that resulted in monetary loss so long as: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; (iii) the loss occurred between November 9, 2021, and the date of the Settlement Agreement; and (iv) the loss is not already covered by one or more of the above reimbursement categories; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. SA, § 3(c).

### 2.   Identity Theft Protection and Credit Monitoring

All Settlement Class Members are automatically eligible to receive, free of charge, thirty (30) months of credit monitoring and identity theft protection, with $1,000,000 in insurance. SA, § 3(d). A Settlement Class Member need merely enroll in the Identity Theft Protection and Credit Monitoring to receive this benefit.

### 3.   Remedial Measures

The Settlement will also provide all Settlement Class Members with benefits in the form of meaningful business practice changes relating to MRIA's data security.  SA, § 4. These business improvements are designed to enhance and maintain MRIA's security posture. Accordingly, these security enhancements directly benefit the Settlement Class, whose PII and PHI remain in MRIA's possession.

### 4.   Confirmatory Discovery

MRIA will provide confirmatory discovery for establishing the appropriateness of the settlement terms as contemplated under Federal Rule of Civil Procedure 23(b)(1)[3] to Plaintiffs. SA, § 5.

### 5.   Settlement Administration

The Parties will choose a third-party Claims Administrator to provide notice of the settlement to the Settlement Class and otherwise administer the settlement in accordance with the Settlement Agreement. SA, § 10(a). MRIA will pay for the costs of settlement administration from the $2,600,000.00 they have made available.  SA, § 6.

The Claims Administrator will administer the Settlement and will review Class Members' claims pursuant to the terms set forth in Section 10 of the Settlement Agreement. Class Counsel

---

[3] Hereinafter referred to as "Rule."

and MRIA will be permitted to audit and review claims submitted, claims approved or denied by the Settlement Administrator, checks issued, calculation of benefits under the settlement, returned checks, and uncashed checks to assist with the effectuation of the settlement. SA, § 10(b). In the event a dispute arises over the validity of a claim, Settlement Class Members will be entitled to submit their claim to a Claims Referee. SA, § 10(d).

### 6. Notice

The Notice plan is straightforward and structured to satisfy due process. Within ten (10) days after entry of the Preliminary Approval Order, MRIA will provide a class list to the Claims Administrator with the last-known names, addresses, and emails (if any) of the Settlement Class Members. SA, § 15. Then, within thirty (30) days after entry of the Preliminary Approval Order (the "Notice Deadline"), the Claims Administrator will send the Short Notice (entitled "Notice of Proposed Class Action Settlement") (attached to the Settlement Agreement as Exhibit B) to Settlement Class Members by U.S. mail or email, if available, which notice will advise that Settlement Class Members have 90 days from the date the Short Form Notice is sent to submit a claim for compensation. SA, § 15.

If a notice is returned to the Claims Administrator as undelivered and a forwarding address is provided, the Claims Administrator will re-mail one additional time to the new address. SA, § 15. If a notice that has been emailed is returned as undeliverable, the Claims Administrator will attempt one additional email execution, and, if not successful, the Claims Administrator will send the notice by U.S. mail. SA, § 15. Lastly, thirty (30) days prior to the Claims Deadline, the Claims Administrator will mail a reminder postcard to all Settlement Class Members for whom claim forms have not yet been received. SA, § 15.

### 7.   Exclusion and Objection

Settlement Class Members who do not wish to be included in the Settlement may choose to exclude themselves by submitting a timely written request for exclusion to the Settlement Administrator. SA, § 16. The request must be mailed to the Claims Administrator at the address provided in the Class Notice no later than 60 days after the Notice Deadline, or any other date set by the Court. SA, § 16.

Additionally, any Settlement Class Member who does not submit a timely written request for exclusion from the Settlement Class may object to the settlement (no later than 60 days after the Notice Deadline) and may appear in person or through counsel, at his or her own expense, at the final approval hearing to present any relevant evidence or argument. SA, § 17.

### 8.   Distribution of Benefits

All claim forms submitted are subject to review for completeness and plausibility by a Claims Administrator. SA, § 3(a). MRIA will pay into a Settlement Fund administered by the Claims Administrator an amount sufficient to pay all approved claims that are undisputed. SA, § 8(a). The amounts paid under the terms of this Settlement shall not exceed the aggregate cap of $2,600,000. SA, § 6. If the aggregate cap is exceeded, the benefits to Settlement Class Members will be reduced on a *pro rata* basis. SA, § 6.

### 9.   Attorney's Fees, Expenses, and Service Awards

The Settlement Agreement authorizes Class Counsel to seek attorney's fees and costs in an amount not to exceed $487,500.00 (subject to Court approval). SA, § 9(a). Likewise, the Settlement Agreement also authorizes Class Counsel to seek Service Awards in an amount not to exceed $2,000.00 to each named Plaintiff for their time and effort on behalf of the Settlement Class. SA, § 9(b).

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement provides fair, reasonable, and adequate compensation for the Settlement Class under the facts and circumstances of this case.  The Settlement was achieved only after extensive arm's length negotiations among the Parties, including a mediation session with Judge Stuart E. Palmer (Ret.).  The Settlement provides valuable benefits and monetary compensation to Settlement Class Members, and it confirms that Defendant has made meaningful changes to its data security measures. Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).  Thus, it should be preliminarily approved under Rule 23(e).

### A.    STANDARDS FOR PRELIMINARY APPROVAL

Rule 23(e) provides that a proposed settlement may be approved only after a "finding that it is fair, reasonable, and adequate."  Approval of a proposed settlement is "committed to the sound discretion" of the court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (citation omitted). However, "[i]n exercising its discretion, the trial court *must* approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (emphasis added). As a matter of public policy, the law favors and encourages settlements. *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354–55 (10th Cir. 1972); *See also Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993), aff'd, 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlements is desirable"); *Newberg on Class Actions* (Fourth) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

"Review of a proposed class action settlement generally involves two hearings." *Manual for Complex Litigation* § 21.632, at 320 (4th ed. 2004). "First, counsel submit the proposed terms of settlement and the judge makes a *preliminary* fairness evaluation." *Id*. At the preliminary approval stage, the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing." *Id.* at 321.

It is important to note the preliminary hearing is not a fairness hearing: "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (alteration in original) (citation and internal quotation marks omitted). For this reason, "the standards for preliminary approval of a class action settlement are not as stringent" as those applied at the final fairness hearing. *Id*. "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation omitted).

The Tenth Circuit has identified four factors (the "*Jones* Factors") for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted

and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324. These factors are in addition to the factors listed under Rule 23(e)(2).[4]

### B.  THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED

This Settlement satisfies the factors contained in Rule 23(e)(2) and the *Jones* factors as demonstrated below. Thus, Plaintiffs and their counsel respectfully request the Court preliminarily approve the settlement so that notice can be disseminated to Class Members.

#### 1.  *Jones* Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's Length

Courts examine "[t]he fairness of the negotiating process" "'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008). This Settlement is the product of months of litigation and legitimate, arm's-length negotiations. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("[When] the parties have bargained at arms' length, there is a presumption in favor of the settlement"). There is no doubt that the Settlement was fairly and honestly negotiated. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) (no indication of collusion weighed in favor of approval).

---

[4] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

The Parties reached a settlement only after vigorously litigating the case. Plaintiffs initially filed five (5) lawsuits. Class Counsel successfully moved for consolidation of the actions, structured effective management of the case, drafted and filed their consolidated complaint, negotiated and agreed upon a formal discovery plan, prepared a case management schedule, and exchanged informal discovery with Defendant. Only after filing the consolidated complaint did the Parties agree to engage in settlement negotiations. Class Counsel's vigorous litigation strategy led to the favorable Settlement obtained for the Class.

The proposed settlement was the result of hard-fought, arms-length negotiations between highly experienced counsel, with the assistance of an experienced mediator, Honorable Stuart E. Palmer (Ret.). *See* Declaration of William B. Federman ("Federman Decl.") (attached hereto as Exhibit 2), ¶ 4. Counsel engaged in a full-day mediation, eventually agreeing in principle to the Settlement and then worked over the subsequent month to finalize the terms of the settlement. *Id.* In sum, because the Settlement "resulted from arm's length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable" for purposes of preliminary approval. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

Further, in negotiating the Settlement and litigating the case, Plaintiffs had the benefit of attorneys who are highly experienced in complex class action litigation, especially data breaches. *See* Federman Decl., ¶¶ 7–8 and Exhibits A–B, thereto. As evidenced by Class Counsel's extensive experience in data breach class actions, Class Counsel are competent, well-respected, and more than capable of prosecuting this case from inception to completion. *Id.* Class Counsel zealously

pursued this matter and acted in the best interests of the Class, which enabled Class Counsel to achieve this favorable Settlement. *Id.* at ¶ 5.

Similarly, Plaintiffs were also committed to acting in the best interests of the Settlement Class. Plaintiffs remained informed on the progress of the case, spoke with Class Counsel regularly, were available as needed throughout the litigation and subsequent settlement, produced documents, and reviewed key terms of the settlement. Plaintiffs made all necessary decisions required in support of the best interests of the Settlement Class.

Accordingly, Rule 23(e)(B), Rule 23(e)(A), and the first *Jones* factor are met.

### 2. *Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation

Serious questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

Plaintiffs believe the claims asserted in the Consolidated Complaint are meritorious, however, Plaintiffs also acknowledge that continuing litigation poses significant risks and additional costs. Due at least in part to their cutting-edge nature and the rapidly evolving law, Data Incident cases like this one generally face substantial hurdles – even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting Data Incident cases dismissed at the Rule 12(b)(6) or Rule 56 stage). In fact, should litigation continue, Plaintiffs will likely be tasked with surviving a motion to dismiss. Class certification is another hurdle that would have to be met – and one that has been denied in other Data Incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

13

In sum, success at trial is far from certain. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Because of this, the Parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. *Lucas*, 234 F.R.D. at 693–94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1138 ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . .").

Thus, the second *Jones* factor militates in favor of approval.

### 3. *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation

Most importantly, the Settlement guarantees Class Members immediate relief from harm as well as protection from future harm, which outweighs the mere possibility of future relief through lengthy and expensive litigation. Class Members can easily submit a claim for their proportional share of various cash payments described above. SA, § 3. On top of that, Class Members are eligible to receive credit monitoring. SA, § 3(d). This recovery is objectively substantial.

If litigation were to continue it would involve considerable time and expense. Motions to dismiss, class certification, *Daubert* motions, and motions for summary judgment would all be hotly disputed, and Defendants would likely appeal any adverse verdict. Plaintiffs face continued risk if they reach for the prospect of greater relief through further litigation. Thus, Plaintiffs' options were not between settlement today and a final resolution before a jury sometime in the near future, but between settlement today and multiple jury trials along with final resolution after many years of spending millions of dollars and reducing the amount of any recovery. As one court

14

aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and internal quotation marks omitted). By reaching a favorable settlement prior to trial, Plaintiffs ensure a risk-free recovery for the Class.

Accordingly, Rule 23(e)(2)(C)(i) is satisfied, as well as the third *Jones* factor.

### 4. *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable

The Settlement is supported by Plaintiffs, Defendant, and their respective counsel, who are each highly familiar with the strengths and weaknesses of this litigation. Other Class Members will have the opportunity to weigh in on the Settlement at the Fairness Hearing if the Court grants preliminary approval.

Class Counsel have carefully evaluated the Settlement, and believe it provides exceptional value to Plaintiffs and the Class. As a result of the Settlement, these benefits will be made immediately available to the Class without the delay or risk attendant with continued litigation. Indeed, there is no guarantee that the Class would secure a better outcome were the case prosecuted through trial. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight" and supports approval of the Settlement. *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *accord Lucas*, 234 F.R.D. at 695; *Rhodes*, 308 F.R.D. at 667.

Moreover, the proposed amount of attorney's fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees and costs *combined* in the amount of $478,500, and service awards for Plaintiffs in the amount of $2,000, each. *Id*. This amount represents *less than 19%* of the $2.6 million potential benefit negotiated for the Class—not including the value of the data

security measures to be implemented by MRIA. This request is well within the range of approvable. *See Sackin v. TransPerfect Global, Inc.,* Case No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) (ECF No. 74) (awarding $715,000 in fees and $17,748.95 in expenses based on data breach settlement that offered similar benefits but to a class of less than 5,000 members); *cf. Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.,* 2010 WL 5387559, at *3 (D. Colo. Dec. 22, 2010) (finding "approximately one third of the total economic benefit bestowed on the class" to be "the customary fee awarded to class counsel"). While Plaintiff will fully brief their fee request by separate motion prior to Settlement Class Members' deadline to object to or exclude themselves from the Settlement, the attorneys' fees, costs, and service awards sought clearly do not present a barrier to preliminary approval.

Accordingly, the final *Jones* factor and Rule 23(e)(2)(C)(iii) are met.

### 5.    Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement

Rule 23(e)(2)(D) requires the Court to confirm the class action settlement treats all class members equitably.

The proposed Settlement is a claims-made settlement, without any preferential treatment of the named Plaintiffs or any segments of the Class. With this proposed Settlement, Settlement Class Members are able to recover damages for injuries caused by the Security Incident and may also receive credit monitoring services. *See* SA, § 3. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses, time spent, and extraordinary losses allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other. *See* SA, § 3.

Class Counsel also intend to apply for Service Awards for Plaintiffs. SA, § 9(b). Courts have held that it is appropriate to make modest payment in recognition of the services that such

plaintiffs perform in successful class litigation. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). A service award to the named Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not constitute preferential treatment.

As evidenced by the foregoing, the allocation plan is effective and is "rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld v. Lenich*, No. 18-CV-6720-NGGPK, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021). Thus, this factor supports preliminary approval of the Settlement.

### 6. Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims."

The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of the mediator. As set forth above, the Settlement makes available to all Settlement Class Members thirty (30) months of Identity Theft Protection and Credit Monitoring. To receive this benefit, a Settlement Class Member need only check a box on the Claim Form and fill out the simple enrollment form. *See* SA, § 3(d). The Settlement also proposes three forms of monetary relief: (i) reimbursement for out-of-pocket expenses; (ii) compensation for Lost Time; and (iii) compensation for Extraordinary Losses. SA, §§ 3(a–c). Finally, the Settlement provides for meaningful data security enhancements to better protect the PII and PHI of the Settlement Class. SA, § 4.

All claims will be processed by the Settlement Administrator, with the oversight of Class

Counsel. *See* SA, §§ 10(a–b). To the extent any Settlement Class Member disputes a claim

determination Class Members will be entitled to submit their claim to a Claims Referee. *See* SA, §

10(d).

The proposed settlement is effective for distributing relief and merits preliminary approval.

### 7.  Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified

Lastly, other than the Settlement Agreement, there are no other agreements required to be

identified under Rule 23(e)(3). As such, this factor supports preliminary approval.

## V.    THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION

At the preliminary approval stage, the Court should also determine whether it will likely

be able to certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3)

of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). A settlement class,

like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the

manageability concerns of Rule 23(b)(3) are not at issue. *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 593 (1997). As demonstrated below, the proposed Settlement Class satisfies all the

requirements of Rule 23(a) and Rule 23(b)(3).

### A.  THE RULE 23(A) FACTORS ARE MET

Under Rule 23(a), a class action may be maintained where: (1) the class is so numerous

that joinder is impracticable; (2) the class has common questions of law or fact; (3) the

representatives' claims are typical of the class claims; and (4) the representatives will fairly and

adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (citing Rule

23(a)).

### 1.   The Settlement Class is So Numerous that Joinder is Impracticable

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978); *see also Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976) (finding class with 358 members to sufficiently numerous).

Here, the class surpasses the threshold requirement to establish numerosity. As the Settlement Agreement indicates, the Settlement Class exceeds 150,000 individuals. SA, § 1. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2.   Plaintiffs' Claims and Defenses are Typical of the Settlement Class

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc*., 564 U.S. at 350.

In this case, there are myriad common questions of law and fact, including, *inter alia*, whether Defendant owed a duty to Plaintiffs and Class Members to adequately protect their PII and PHI and to provide timely and accurate notice of the Security Incident to Plaintiffs and the Class; whether Defendant breached these duties; whether Defendant violated federal and state laws;

whether Defendant knew or should have known that its computer and network systems were vulnerable to attack; whether Defendant's conduct, including its failure to act, was the proximate cause of the breach of its computer and network systems resulting in the exfiltration of PII and PHI; whether Defendant wrongfully failed to inform Plaintiffs and Class Members that it did not maintain security procedures sufficient to reasonably safeguard their PII and PHI; whether Defendant has taken adequate preventive measures to ensure the Plaintiffs and Class Members will not experience further harm; whether Plaintiffs and Class Members suffered injury as a proximate result of Defendant's conduct or failure to act; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Defendant.

Resolving the allegations surrounding Defendant's alleged conduct relating to the Security Incident will resolve issues that are "central to the validity of each of the claims in one stroke." *Id.* Commonality is satisfied.

### 3. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." *Id.* "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010)). Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *see also*

*Amchem Prods. Inc.*, 521 U.S. at 625–26. At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.

Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for the same reimbursements upon submitting a valid claim form, which may be reduced *pro rata* based on the claims rate and availability of funds. SA, §§ 3, 6.

Further, Class Counsel has decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Federman Decl., ¶¶ 6–7. Moreover, they have put their collective experience to use in negotiating a settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

## B. THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3)

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. Inc.*, 521 U.S. at 618.

### 1. Common Questions Predominate

Plaintiffs satisfy the predominance requirement because questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to the

Class Members. Most notably, all Plaintiffs and Class Members were affected by the same Data Incident and had their PII and PHI exposed to cybercriminals. Here, the same alleged course of conduct by Defendant's allegedly inadequate data security, which permitted the Data Incident to occur, gives rise to all Settlement Class Members' claims. As set forth above, there are numerous common issues relating to Defendant's liability at the core of this action, which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2. A Class Action is the Superior Method for Adjudication

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. The superiority requirement is easily satisfied here where there are a large number of class members with small damages stemming from the same course of conduct. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014).

The Settlement Agreement and notice plan provide Settlement Class Members with the ability to obtain prompt, predictable, and certain relief. There are also well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. SA, §§ 16, 17. The Settlement will also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant, by going forward with this case as a class action. Additionally, because the Parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. Finally, the complexity of the

claims and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

## VI.    <u>THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM</u>

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008).

Here, Defendant will provide the Settlement Administrator with the list of the names, addresses, and emails (if known) of all Settlement Class Members in its records. SA, § 15. This is likely 100% of the Settlement Class. The Settlement Administrator will then send the Short Notice (attached to the Settlement Agreement as Exhibit B) to Settlement Class Members by U.S. mail or email within thirty (30) days of the Preliminary Approval Order. SA, § 15. Settlement Class Members will have ninety (90) days from the date the Short Form Notice is sent to submit a claim for compensation. SA, § 15. If a notice is returned to the Claims Administrator as undelivered and a forwarding address is provided, the Claims Administrator will re-mail one additional time to the new address. SA, § 15.  If a notice that has been emailed is returned as undeliverable, the Claims

Administrator will attempt one additional email execution, and, if not successful, the Claims Administrator will send the notice by U.S. mail. SA, § 15. Thirty (30) days prior to the Claims Deadline, the Claims Administrator will mail a reminder postcard to all Settlement Class Members for whom claim forms have not yet been received. SA, § 15.

The Settlement Administrator will also establish a Settlement Website to which Settlement Class Members may refer for information about the Settlement, submit online Claim Forms, submit inquiries, and view important settlement documents and deadlines. SA, § 10(a). This is in addition to maintaining a toll-free telephone number and P.O. Box that Settlement Class Members can use to seek additional information regarding the Settlement. SA, § 10(a).

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, objecting, and/or appearing at the Final Approval Hearing. *See* SA, at Exhibits A–C. Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances.

## VII.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter an order substantially similar to the proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement.

Date: March 16, 2023                              Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (admitted pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

24

Gary M. Klinger (admitted pro hac vice)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
Email: gklinger@milberg.com

*Interim Co-Lead Counsel for Plaintiffs*

Charles H. Thronson, USB 3260
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
CThronson@parsonsbehle.com

*Interim Liaison Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned herby certifies that, on March 16, 2023, a copy of the above pleading was electronically filed with the Clerk of Court of the United States District Court for the Western District of Oklahoma, using the CM/ECF system, which will send a Notice of Electronic filing to all parties of record.

*/s/ William B. Federman*
William B. Federman