Gary M. Klinger (admitted pro hac vice)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
Email: gklinger@milberg.com

Charles H. Thronson, USB 3260
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
CThronson@parsonsbehle.com
*Interim Liaison Counsel for Plaintiffs*

William B. Federman (admitted pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com
*Interim Co-Lead Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SHANE WHITE; AHMED AMER; JOEL THORNTON; PATRICIA A. DEAN;** and **JAMES BRUNO**, individually and on behalf of all others similarly situated<br><br>      Plaintiffs,<br>v.<br><br>**MEDICAL REVIEW INSTITUTE OF AMERICA, LLC,**<br><br><br>Defendant. | **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No. 2:22-cv-00082<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................. 1

II.   INCORPORATION BY REFERENCE ............................................................ 2

III.  SUMMARY OF SETTLEMENT ..................................................................... 3

    A.   Settlement Benefits.................................................................................... 3

    B.   Fees, Costs and Service Awards ............................................................... 4

IV.   LEGAL STANDARD....................................................................................... 4

V.    ARGUMENT AND AUTHORITIES................................................................ 6

    A.   Whether the Settlement was Fairly and Honestly Negotiated............. 6

    B.   The Strength of the Plaintiffs' Case......................................................... 6

    C.   The Risk, Expense, Complexity and Likely Duration of Further Litigation ........ 7

    D.   The Risk of Maintaining Class Action Status Throughout the Trial.................. 8

    E.   The Amount Offered Under the Settlement .............................................. 9

    F.   The Amount of Discovery Completed ...................................................... 10

    G.   The Experience and Views of Counsel .................................................... 11

    H.   Reaction of the Class Members ............................................................... 12

VI.   THE SETTLEMENT ADMINISTRATOR PROVIDED NOTICE PURSUANT TO THIS
      COURT'S PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS AS
      WELL AS RULE 23................................................................................... 12

VII.  CONCLUSION................................................................................................ 14

ii

## **TABLE OF AUTHORITIES**

## **CASES**

*Baksh v. IvyRehab Network, Inc.*,

    No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) ........................................................... 9

*Billittri v. Securities America, Inc.*,

    Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)

    ...................................................................................................................................... 12

*Chacon, et al. v. Nebraska Medicine*,

    No. 8:21-cv-00070 (D. Neb.) .................................................................................... 10

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,

    807 F. App'x 752 (10th Cir.).................................................................................... 13

*Gonzalez v. Elna Sefcovic, LLC*,

    141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ............................................................... 13

*Gordon v. Chipotle Mexican Grill, Inc.*,

    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)........... 7

*Gradie v. C.R. England, Inc.*,

    No. 2:16-CV-00768-DN, 2020 WL 6827783 (D. Utah Nov. 20, 2020)............... 5, 10

*Green-Cooper v. Brinker Int'l, Inc.*,

    73 F.4th 883 (11th Cir. 2023) .................................................................................... 8

*Grimm v. American Eagle Airlines, Inc.*,

    No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)............... 8

*Hillman v. Lexicon Consulting, Inc.*,

    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April 27, 2017)................ 11

iii

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,

    997 F.3d 1077 (10th Cir. 2021). .................................................................................. 6

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

    266 F. Supp. 3d 1 (D.D.C. 2017) .............................................................................. 7

*Jones v. Nuclear Pharmacy, Inc.*,

    741 F.2d 322 (10th Cir. 1984) .............................................................................. 5, 6

*Lawrence v. First Fin. Inv. Fund V, LLC*,

    No. 219CV00174RJSCMR, 2021 WL 3809083 (D. Utah Aug. 26, 2021). ............................ 6

*Mowery v. Saint Francis Healthcare Sys.*,

    No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020)...................................................... 9

*Rutledge, et al. v. Saint Francis Healthcare Sys.*,

    No. 1:20-cv-00013-SPC (E.D. Mo.) .......................................................................... 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

    314 F.3d 1180 (10th Cir. 2002) ............................................................................... 5

*Smith v. Triad of Ala., LLC*,

    No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017)............... 8

*Stott v. Capital Financial Services*,

    277 F.R.D. 316 (N.D. Tex. 2011) ......................................................................... 12

## **RULES**

Fed. R. Civ. P. 23 .................................................................................................. passim

**<u>TREATISES</u>**

Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., *Managing Class Action Litigation: A*

    *Pocket Guide for Judges*, 27 (3d Ed. 2010) ............................................................. 14

Plaintiffs Shane White, Ahmed Amer, Joel Thornton, Patricia A. Dean and James Bruno (collectively, "Plaintiffs") respectfully move this Court for final approval of this class action settlement and submit this Motion and Memorandum in Support. Defendant does not oppose the relief requested in this Motion and Memorandum of Law in Support.[1]

## I.    <u>INTRODUCTION</u>

On March 22, 2023, this Court preliminarily approved a class action settlement between Plaintiffs and Defendant Medical Review Institute of America, LLC ("MRIA" or "Defendant"), and ordered that notice be given to the Class (ECF No. 54). The Settlement negotiated on behalf of the Class provides up to $2.6 million in benefits, including: (i) 30 months of credit monitoring and identity-theft protection services; (ii) reimbursements up to $700 for ordinary out-of-pocket losses (including up to 3 hours of lost time reimbursed at $20 per hour); and (iii) up to $5,000 for documented extraordinary losses arising from unreimbursed identity theft and fraud. As a part of the Settlement, MRIA will implement substantial remedial measures concerning its data security no later than December 31, 2023. MRIA will also pay the cost of notice and administration, attorneys' fees, expenses, and service awards. The Settlement is an excellent result for the Settlement Class.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement only after an extensive investigation and prolonged arm's-length negotiations. This Settlement was obtained against a well-funded defense by a well-regarded law firm. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and Plaintiffs would face considerable risks at each stage of litigation. Despite these risks, through hard-fought

---

[1] A proposed order was attached as Exhibit E to the Settlement Agreement filed herein (ECF No. 52-1).

negotiations and skillful work of Settlement Class Counsel, the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 96.58% of the Class, easily meeting the due process standard. (*See* Declaration of Bryn Bridley on Notice and Settlement Administration ("Atticus Decl."), attached hereto as Exhibit 1, ¶ 8). The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a claim and how to opt-out or object to the Settlement. (*Id*. at Exhibits B and C.) Out of the 150,926 Settlement Class Members who were mailed a Short Form Notice and Reminder Notice, only 15 sought to be excluded from the Settlement, only 11 of those opt-outs were timely, and none have objected. (*Id*. ¶¶ 16–17). This indicates strong Class support for the Settlement. Further evidence of that staunch support is a high, **4.32%** claims rate.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and grant the Plaintiffs' request for attorneys' fees, expenses, and service awards.

## II.    <u>INCORPORATION BY REFERENCE</u>

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 52) and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. Plaintiffs also incorporate by

reference Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 56), filed on June 6, 2023.

## III. <u>SUMMARY OF SETTLEMENT</u>

The Settlement Class is comprised of 154,935 individuals. (SA, § 1).[2] The proposed Settlement Class is defined as follows:

> All persons residing in the United States to whom MRIA sent its notice of the Data Incident that MRIA discovered on or about November 9, 2021.

### A. Settlement Benefits

MRIA will reimburse ordinary out-of-pocket expenses incurred as a result of the Data Incident up to $700.00 per Class Member, with appropriate claim supporting documentation. (*See* SA, § 3(b)).

Settlement Class Members who spent time addressing the Data Incident were eligible to receive reimbursement for up to three (3) hours of attested time spent responding to the Data Incident at a rate of twenty dollars ($20.00) per hour. (SA, § 3(b)(iii)). This payment will be included in the $700.00 per person cap for Compensation for Documented Out-of-Pocket Losses and Lost Time. (SA, § 3(b)(iii)).

Additionally, MRIA will provide up to $5,000.00 in compensation to each claimant who was the victim of identity theft that resulted in monetary loss so long as: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; (iii) the loss occurred between November 9, 2021, and the date of the Settlement Agreement; and (iv) the loss is not already covered by one or more of the above reimbursement categories; and the Settlement Class Member made reasonable efforts to avoid, or seek

---

[2] "SA" shall refer to the Settlement Agreement filed herein (ECF No. 52-1). All capitalized terms not defined herein shall refer to those terms defined in the Settlement Agreement.

3

reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. (SA, § 3(c)).

All Settlement Class Members are eligible to claim thirty (30) months of credit monitoring and identity theft protection, with $1,000,000 in insurance. (SA, § 3(d)).

The Settlement will also provide all Settlement Class Members with benefits in the form of meaningful business practice changes with respect to MRIA's data security. (SA, § 4). These business improvements are designed to enhance and maintain MRIA's security posture. Accordingly, these security enhancements directly benefit the Settlement Class Members, whose PII and PHI remain in MRIA's possession.

Defendant also agreed to pay the costs of notice and claims administration. The estimated cost of completion is $206,964. (*See* Atticus Decl., ¶ 18).

**B. Fees, Costs and Service Awards**

The Settlement Agreement also calls for a reasonable service award to each Representative Plaintiff in the amount of $2,000, to be paid by Defendant and subject to Court approval. (SA, § 9(b)). Additionally, pursuant to the terms of the Agreement, Settlement Class Counsel filed their Unopposed Motion for Attorney Fees Costs, Expenses and Service Awards to Class Representatives on June 6, 2023. (ECF No. 56). There has been no objection to the attorneys' fees, expenses, or service award requests.

**IV.  LEGAL STANDARD**

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has

considered and granted preliminary approval of class certification. (ECF No. 54). For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 52), this Court should certify the class for purposes of final approval of the settlement.

Next, the Court must determine whether the settlement is fair, reasonable, and adequate. The court "may approve a settlement...that would bind class members only after a hearing and on finding that the settlement...is fair, reasonable, and adequate." *Gradie v. C.R. England, Inc*., No. 2:16-CV-00768-DN, 2020 WL 6827783, at *9 (D. Utah Nov. 20, 2020) (quoting Rule 23(e)(2)). Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187 (10th Cir. 2002).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)–(iv).

In the Tenth Circuit, approval of a class action must also satisfy the factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (the "*Jones* Factors"). The factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly

negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable." *Id.*

### V.    ARGUMENT AND AUTHORITIES

Here, the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* Factors and should be finally approved.

### A.    Whether the Settlement was Fairly and Honestly Negotiated.

The negotiations in this matter occurred at arm's length. (*See* Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Federman Decl."), ¶ 4 (ECF No. 52-2)). "District courts within the Tenth Circuit have found settlements to be fairly and honestly negotiated where parties have vigorously advocated their positions and where a settlement was reached through arms-length negotiations." *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 219CV00174RJSCMR, 2021 WL 3809083, at *4 (D. Utah Aug. 26, 2021). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). The use of an experienced neutral mediator here (retired Judge Palmer) also weighs in favor of a finding of non-collusiveness. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1091 (10th Cir. 2021).

### B.    The Strength of the Plaintiffs' Case.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that MRIA's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and

common law claims Plaintiffs plead in their Complaint. While Plaintiffs believe they have strong claims, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where the chances of prevailing on the merits are uncertain—especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

**C.  The Risk, Expense, Complexity and Likely Duration of Further Litigation.**

While Plaintiffs believe their case is strong, all cases, including this one, are subject to substantial risk. This case involves a proposed class of roughly 150,000 individuals (each of whom may need to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that has already prevailed on a motion to dismiss in another action arising from this same incident filed in California. Defendant has already asserted and will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further litigation.

Although nearly all class actions involve a prominent level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases

can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

### D. The Risk of Maintaining Class Action Status Throughout the Trial.

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc*., No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). And even though class certification was recently affirmed in part by the Eleventh Circuit in the high-profile *In re Brinker* case, the court remanded the case to clarify the predominance finding. *See Green-Cooper v. Brinker Int'l, Inc*., 73 F.4th 883 (11th Cir. 2023). Class certification through trial is never a settled issue and is always a risk for the Plaintiffs.

### E.  The Amount Offered Under the Settlement.

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement provides up to $2,600,000 in benefits. The Settlement makes significant relief available to Settlement Class Members. Each Class Member was eligible to make a claim for up to $700 in reimbursement for ordinary out-of-pocket losses and lost time (up to 3 hours at a rate of $20 per hour), and up to $5,000 in reimbursements for extraordinary losses. (SA, §§ 3(b)–(c)).

Moreover, every Settlement Class Member who submits a valid claim is eligible to receive 30 months of free credit monitoring and identity-theft protection services. (SA, § 3(d)). These are substantial benefits conferred to Settlement Class Members. Because the settlement amount here is similar to (and exceeds) other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See, e.g., Mowery v. Saint Francis Healthcare Sys*., No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys*., No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the

form of data security enhancements); *Chacon, et al. v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.) (data breach settlement providing up to $300 in ordinary expense reimbursements; up to $3,000 in extraordinary expense reimbursements; credit monitoring services; and equitable relief in the form of data security enhancements). In light of the difficulties and expenses Class Members would face pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

### F. The Amount of Discovery Completed.

Before entering into settlement discussions on behalf of class members, counsel should have sufficient information to make an informed decision. Such is the case here. By the time the Settlement in principle was reached, Plaintiffs and Plaintiffs' Counsel were well informed of the strengths and weaknesses of the Action. (*See* Federman Decl. ¶ 5 (ECF No. 52-2)). Indeed, the Settlement was achieved only after: a thorough pre-complaint investigation that culminated in the preparation of detailed complaints; the consideration of relevant informal discovery; the preparation of a detailed mediation statement that included a proposed settlement term sheet; numerous discussions with Plaintiffs concerning possible settlement terms and potential improvements to offers made by Defendant; and intense settlement negotiations that included an exchange of information between the Parties about the Data Incident, potential damages, and the input of Plaintiffs. (*Id*.).

Although the Parties did not engage in formal discovery (which is not required for final approval in this district – *see, e.g., Gradie*, 2020 WL 6827783, at *9), the informal discovery detailed above along with Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and

substantial financial resources to come up to speed on the subject area. (Federman Decl., ¶¶ 6–7 (ECF No. 52-2)). "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Plaintiffs are well informed about the strengths and weaknesses of this case.

### G.  The Experience and Views of Counsel.

The judgment of experienced Plaintiffs' counsel also supports the finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data incident litigation, and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are fair and reasonable considering reported average out-of-pocket expenses incurred due to a data security incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel, who have litigated numerous data breach cases, spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. (*See* Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval ("Final Decl."), attached hereto as Exhibit 2, ¶ 3).

11

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

### H.  Reaction of the Class Members.

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a total of 150,926 to whom notice was mailed, only 15 Class Members requested exclusion (and only 11 of those were timely) and there were no objections. (*See* Atticus Decl., ¶¶ 16–17). As of July 20, 2023, the administrator received 6,893 claim submissions. (*Id.* ¶ 14). Out of this number, 6,221 (90.32%) have been deemed valid, and there were another 312 insufficient or incomplete submissions filed by Class Members (with the 360 remaining claims being either duplicates or submissions by non-Class Members). (*Id.* ¶¶ 14–15). 6,533 valid or curable claim submissions amounts to a claims rate of 4.32%, a rate that meets or far exceeds other finally approved data breach settlements. (*See* Final Decl., ¶ 4).

### VI.  THE SETTLEMENT ADMINISTRATOR PROVIDED NOTICE PURSUANT TO THIS COURT'S PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS AS WELL AS RULE 23.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *See* Fed. R. Civ. P. 23(e). The Notice provided here meets this standard. The individual, direct, first-class mail notice employed here is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The

subsequent Reminder Notice, also mailed directly to Class Members, who had not yet filed a claim, reinforced the adequacy of the notice. The content of the Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand. Thus, the notice program was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

As outlined in detail in the supporting Atticus declaration, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On April 21, 2023, Atticus mailed the "Short Form Notice" by U.S. first class mail to 150,926 Settlement Class Members. (Atticus Decl., § 7). The form and contents of the Short Form Notice was previously approved by this Court, and provided an overview of the settlement terms, the benefits available, the options available to Class Members and the settlement website and toll-free number where additional settlement information could be obtained. (*Id.*). After all address tracings and remailings, Atticus delivered 145,762 Short Form Notices, equating to a delivery success percentage (or "reach rate") of 96.58%. (*Id*. § 8.). Atticus (through its representative Bryn Bridley, an experienced professional in the field of providing class action notice) offers the opinion that this "reach rate" for notice exceeds necessity to satisfy due process. (*Id*.) Such notice complies with the program approved by this Court in its Preliminary Approval Order and is consistent with Notice Programs approved in Utah, the Tenth

Circuit and across the United States. A reach rate of 96.58% is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges*, 27 (3d Ed. 2010).

On June 20, 2023, Atticus also mailed a Reminder Notice to all Class Members who had not yet filed a claim. (Atticus Decl., ¶ 12). This Reminder Notice reinforced the original direct notice, and further served to satisfy the due process requirements and Rule 23(c). The Reminder Notice also materially boosted the claims rate here.

In addition to the direct mail notice and Reminder Notice, on April 21, 2023, Atticus published a dedicated website for the Settlement with an easy to remember domain name (www.MRIAsettlement.com). (*Id*. ¶ 9). Relevant documents were posted on the website for Settlement Class Members to review. To date, there have been 25,350 visits to the Settlement Website. (*Id*. ¶ 10). Also on April 21, 2023, Atticus established a toll-free telephone number to allow Class Members to call for additional information, listen to answers to FAQs, speak with a live customer support specialist during regular business hours, and to leave an after-hours message to receive a call-back. (*Id*. ¶ 11).There have been 6,007 calls to date. (*Id*.) The combination of direct mail notice, the reminder notice, the website, and the toll-free telephone line all served to provide the best notice practicable to this Class and satisfy the Rule 23(c) requirements.

## VII.    CONCLUSION

Plaintiffs respectfully request this Court grant this motion, enter the proposed Final Approval Order, finally certify the Settlement Class, appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award Plaintiffs a service award in the amount of $2,000 each, award Settlement Class Counsel combined attorneys' fees and expenses of $487,500, and grant final approval of this Settlement.

Date: August 10, 2023                                Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
Email: gklinger@milberg.com
*Settlement Class Counsel and Counsel for
Plaintiffs*

Charles H. Thronson, USB 3260
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
CThronson@parsonsbehle.com
*Interim Liaison Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned herby certifies that, on August 10, 2023, a copy of the above pleading

was electronically filed with the Clerk of Court of the United States District Court for the District

of Utah, using the CM/ECF system, which will send a Notice of Electronic filing to all parties of

record.

*/s/ William B. Federman*
William B. Federman

15